1                    UNITED STATES OF AMERICA

2                  UNITED STATES DISTRICT COURT

3                 CENTRAL DISTRICT OF CALIFORNIA

4                       CENTRAL DIVISION

5                          -  -  -
                  HONORABLE J. SPENCER LETTS
6          UNITED STATES DISTRICT JUDGE PRESIDING
                           -  -  -
7

8    UNITED STATES OF AMERICA,         )
                                       )
9               PLAINTIFF,             )
                                       )
10   VS.                               )   CR 05-00202-JSL
                                       )
11   JEFFREY WOLDEN DEVORE,            )
                                       )
12              DEFENDANT.             )
     _____)
13

14

15

                       *CHANGE OF PLEA HEARING*
16
                     LOS ANGELES, CALIFORNIA
17
                        MAY 4, 2005
18

19

20

21

22

23             ROSALYN ADAMS, CSR 11794
            FEDERAL OFFICIAL COURT REPORTER
24         312 NORTH SPRING STREET, ROOM 410
            LOS ANGELES, CALIFORNIA 90012
25                 (213) 894-2665


            UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   **APPEARANCES:**

2   **ON BEHALF OF THE PLAINTIFF:**

3           OFFICE OF UNITED STATES ATTORNEY
            BY:  JENNIFER ANNE CORBET
4           CRIMINAL DIVISION - US COURTHOUSE
            312 NORTH SPRING STREET
5           SUITE 1400
            LOS ANGELES, CALIFORNIA 90012-4700
6           (213) 894-3752

7

8   **ON BEHALF OF DEFENDANT:**

9           LAW OFFICE OF ANGEL NAVARRO
            BY:  ANGEL NAVARRO
10          714 WEST OLYMPIC BOULEVARD
            SUITE 450
11          LOS ANGELES, CALIFORNIA 90015
            (213) 744-0216

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

```
 1        LOS ANGELES, CALIFORNIA; WEDNESDAY, MAY 4, 2005; 10:00 A.M.

 2                            --oOo--

 3

 4

 5             THE CLERK:  ITEM CR 05-202-JSL:  UNITED STATES OF

 6    AMERICA VS. JEFFREY WOLDEN DEVORE.

 7             MS. CORBETT:  YOUR HONOR, JENNIFER CORBETT ON

 8    BEHALF OF THE UNITED STATES.

 9             MR. NAVARRO:  GOOD AFTERNOON, YOUR HONOR.

10             ANGEL NAVARRO WITH MR. DEVORE, WHO IS PRESENT IN

11    COURT.

12             THE COURT:  GOOD AFTERNOON.

13             MR. DEVORE -- IS THAT THE WAY IT'S PRONOUNCED?

14             AS I UNDERSTAND, MR. DEVORE WANTS TO -- NOT WANTS

15    TO, BUT IS GOING TO CHANGE HIS PLEA.  I UNDERSTAND THAT THERE

16    IS NO AGREEMENT AND I UNDERSTAND THERE'S A FIVE-YEAR

17    MANDATORY MINIMUM.  THAT'S ABOUT ALL I KNOW AT THIS MINUTE.

18             IS THERE ANYTHING ELSE I SHOULD KNOW?

19             MR. NAVARRO:  NO, YOUR HONOR.  I THINK YOU HAVE THE

20    BASICS.

21             THE COURT:  ARE THERE GOING TO BE LEGAL QUESTIONS?

22             MR. NAVARRO:  I DON'T EXPECT THERE TO BE ANY LEGAL

23    QUESTIONS, YOUR HONOR.

24             THE COURT:  I THINK THERE PROBABLY WILL BE.

25             MR. NAVARRO:  IN TERMS OF WHAT, YOUR HONOR?
```

```
 1          THE COURT:  WELL, I -- MRS. WEBB WAS JUST ADVISING

 2    ME OF SOMETHING.  I'M NOT SURE I DID KNOW IT -- I MIGHT

 3    HAVE -- ABOUT WHAT I TAKE AS A MANDATORY PERIOD OF SUPERVISE

 4    RELEASE OF A LIFETIME.

 5          IS THAT TRUE OR IS THAT JUST SOMETHING I COULD DO?

 6          MR. NAVARRO:  THAT'S SOMETHING YOU CAN DO.  YOU

 7    HAVE DISCRETION FOR THAT IN CASES LIKE THIS ONE.

 8          THE COURT:  OKAY.  I DON'T KNOW WHAT MAKES THIS

 9    CASE LIKE THIS.

10          MR. DEVORE, DON'T WORRY ABOUT ME.  THE NATURE OF

11    THE PROBLEM HERE IS THAT I SHOULD THINK THAT YOU WOULD BE A

12    LITTLE BIT NERVOUS ABOUT WHO YOU CAME BEFORE.  DON'T BE.  YOU

13    WILL FIND AS EVERYBODY DOES TWO THINGS:  ONE IS RIGHT NOW

14    YOU'RE INNOCENT UNTIL PROVEN GUILTY.  AND THE STARTING PLACE,

15    THAT IS YOU WALK THROUGH THE DOOR WITH THE SAME TYPE OF

16    RESPECT THAT ANYBODY ELSE WOULD.  YOU DON'T -- WITH ME, NOT

17    PERSONALLY.  YOU'RE NOT GOING TO LOSE THAT REGARDLESS OF THE

18    OUTCOME OF THIS.  MY JOB IS THAT PEOPLE DO THE ELEMENTS OF

19    CRIMES AND I DECIDE THE PUNISHMENTS.  AND IF THEY DON'T ADMIT

20    THEM, THEN THERE'S A TRIAL AND I CONDUCT A TRIAL.  BUT IT

21    ISN'T MY JOB TO JUDGE THE PEOPLE, I NEVER DO.  I'M NOT GOING

22    TO JUDGE YOU; SO IF THAT'S A THOUGHT THAT HAS CROSSED YOUR

23    MIND, DON'T LET IT.  MR. NAVARRO PROBABLY ASSURED YOU ABOUT

24    THAT IN ADVANCE.  IF HE DIDN'T, HE SHOULD HAVE.

25          MR. NAVARRO:  I SURE DID, YOUR HONOR.
```

1          THE COURT:  DID YOU?  WELL, I TAKE IT BACK.  BUT I

2   THINK -- YOU KNOW, IT'S DIFFICULT TO HAVE TO STAND THERE NO

3   MATTER WHAT THE CIRCUMSTANCE IS.  AND I DON'T FIND IT USEFUL

4   TO HAVE SOMEBODY WORRYING AROUND WHAT I MIGHT BE THINKING

5   ABOUT UNDERNEATH THE ROBE.  THE ROBE'S A ROBE.  SO WITH THAT

6   SAID, WHAT'S THE NATURE OF THIS THAT WOULD CAUSE FOR THAT

7   DISCRETION?

8          MR. NAVARRO:  IN TERMS OF WHAT?

9          THE COURT:  IS IT JUST THE CRIME ITSELF THAT GIVES

10  ME DISCRETION?

11         MR. NAVARRO:  I'M SORRY, YOUR HONOR.  I THOUGHT YOU

12  WERE STILL TALKING ABOUT YOU BEING A NICE JUDGE.  I'M SORRY.

13         IN TERMS OF -- THERE WAS A CHANGE IN THE LAW, I

14  BELIEVE IN 2003, WHICH MADE MANDATORY MINIMUMS OF FIVE YEARS,

15  AND 15 YEARS FOR CERTAIN OFFENSES OF THIS NATURE IN THE CHILD

16  PORNOGRAPHY FIELD.  ALSO, CONGRESS FELT IT FIT THAT PEOPLE

17  CAN GET LIFETIME SUPERVISED RELEASE AS A RESULT OF BEING

18  CONVICTED.

19         THE COURT:  OF THIS CRIME, JUST OF COMMITTING THE

20  ELEMENTS OF THE CRIME --

21         MR. NAVARRO:  YES.

22         THE COURT:  -- AND THE COMMISSION.  AND THAT'S ALL

23  I WANTED TO KNOW.  FRANKLY, IT'S A BIT OF A RELIEF BECAUSE WE

24  PROBABLY WOULD HAVE BEEN MAKING SOME LAW.  YOU DON'T HAVE TO

25  WORRY ABOUT THAT.  AND DON'T YOU WORRY ABOUT IT.  I'M NOT

1    SURE IT WOULDN'T HAVE CONSTITUTIONAL QUESTIONS, BUT IF IT

2    WERE TRUE THAT IT WAS A MANDATORY LIFETIME SUPERVISED

3    RELEASE, YOU WOULD HAVE SOME JUDGES, AND I WOULD PROBABLY BE

4    ONE, THAT WOULD THINK THERE WERE LEGAL PROBLEMS WITH THAT.

5    YOU DON'T HAVE TO WORRY ABOUT IT BECAUSE IT'S NOT.  I CAN'T

6    PROMISE WHAT I'D DO IN EXERCISING DISCRETION BECAUSE I HAVE

7    NO IDEA WHAT THE CIRCUMSTANCES WILL BE.

8             WITH THAT SAID, MR. NAVARRO, DO YOU KNOW IF YOUR

9    CLIENT'S BEEN THROUGH THIS PROCESS BEFORE?

10             MR. NAVARRO:  YOUR HONOR, MY CLIENT HAS NEVER BEEN

11   CONVICTED OF ANY CRIME.  SO, NO.

12             THE COURT:  MS. WEBB, WOULD YOU PLACE MR. DEVORE

13   UNDER OATH.

14                  (CLERK SWEARS DEFENDANT.

15             THE COURT:  WITH THAT SAID, THAT'S A SIMPLE

16   PRECAUTIONARY THING.  I'M GOING TO BE ASKING YOU QUESTIONS.

17   THE ANSWERS HAVE TO BE TRUE.  IF I PUT YOU UNDER OATH, WHICH

18   I'VE JUST DONE, WERE YOU TO GIVE ME AN INTENTIONALLY FALSE

19   ANSWER -- WHICH I HAVE NO REASON TO BELIEVE YOU'D EVER DO --

20   BUT IF YOU DO, IT WOULD BE A SEPARATE OFFENSE.  IT WOULD BE

21   PERJURY OR FALSE STATEMENT.  YOU COULD BE PROSECUTED FOR

22   THAT, INDEPENDENTLY.

23             I CAN'T IMAGINE THE CIRCUMSTANCE IN WHICH YOU'D

24   WANT TO DO THAT, BUT THAT'S THE ASSURANCE THAT I HAVE THE

25   ANSWER WILL BE TRUE, AND I HAVE TO WARN YOU ABOUT THAT.  THE

1    PROCESS IS THIS -- AND I'M SORRY ABOUT MY VOICE, BUT IT'S

2    TEMPORARILY GONE.

3            THE PROCESS IS, IF YOU'RE GOING TO PLEAD GUILTY --

4    I DON'T KNOW THAT THIS IS TRUE IN EVERY COURT, BUT IT'S TRUE

5    IN THE FEDERAL COURT.  YOU HAVE TO BE GUILTY OF THE CRIME

6    THAT YOU'RE PLEADING TO.  YOU CAN'T PLEAD TO THE TUESDAY

7    CRIME, RATHER THAN THE FRIDAY CRIME BECAUSE IT'S MORE

8    FAVORABLE OR FOR MY OTHER REASON.  SO THE THINGS THAT I HAVE

9    TO ESTABLISH ARE THESE:  ONE IS AT THE TIME THAT YOU MAKE THE

10   PLEA, DO YOU KNOW WHAT YOU'RE DOING?  OBVIOUSLY, THE PLEA IS

11   NOT GOOD IF YOU'RE NOT.  SO THAT'S THE FIRST ORDER OF

12   BUSINESS.  THE SECOND IS I'VE GOT TO MAKE SURE THAT YOU

13   ACTUALLY COMMITTED THE CRIME THAT YOU'RE CHARGED WITH.  THIRD

14   ONE IS -- AND THIS IS -- I'LL CONNECT UP.  THE THIRD ONE

15   SURPRISES PEOPLE A LITTLE BIT.  I HAVE TO BE SURE THE

16   GOVERNMENT COULD PROVE GUILTY BEYOND A REASONABLE DOUBT TO AT

17   LEAST ONE REASONABLE JUROR.

18           THE REASON FOR THAT IS, IF I FELT IT COULDN'T, THE

19   CASE COULDN'T GO TO TRIAL AT ALL.  I'D HAVE TO DISMISS IT.

20   THAT WOULD RAISE AN APPELLATE QUESTION, BUT I WOULD HAVE TO

21   DISMISS IT IF I THOUGHT NO REASONABLE JURY COULD BELIEVE THE

22   CASE.  THE THING THAT YOU'RE PROBABLY MORE FAMILIAR WITH, YOU

23   HAVE AN ABSOLUTE RIGHT TO INSIST ON RETAINING THE PLEA YOU'VE

24   ALREADY MADE, WHICH IS A NOT GUILTY PLEA, AND TO GO TO TRIAL

25   TO SEE WHETHER THE GOVERNMENT CAN PROVE THE CASE BEYOND A

1     REASONABLE DOUBT TO 12 JURORS.  YOU HAVE A LOT OF RIGHTS IN

2     CONNECTION WITH THAT.  THOSE ARE THE RIGHTS THAT YOU WAIVE IF

3     YOU PLEAD GUILTY, THE RIGHT TO GO FORWARD AND HAVE A JURY.

4     THOSE ARE REALLY THE CORNERSTONE OF THE COUNTRY WE LIVE IN.

5     SO IT'S THE LAW, BUT IT WOULD ALSO BE THE RIGHT THING, NO

6     JUDGE COULD LET SOMEBODY PLEAD GUILTY IF HE DIDN'T UNDERSTAND

7     THOSE RIGHTS BECAUSE THEY'RE IMPORTANT.  AND THEY'RE NOT ONLY

8     IMPORTANT, THEY PRESUPPOSE THINGS WHICH I WILL EXPLAIN, NOT

9     TOO MUCH LATER, THAT MAY NOT BE AS CLEAR TO YOU GOING IN AS

10     THEY WOULD HAVE.  WE'LL GO THROUGH ALL OF THAT PROCESS.

11         I WILL BE ASKING QUESTIONS REPEATEDLY.  DO YOU

12     UNDERSTAND THIS AND DO YOU UNDERSTAND THAT?  IT'S NOT A TEST.

13     YOU LOOK LIKE AN INTELLIGENT MAN.  I ASSUME YOU ARE.  IT'S

14     NOT A TEST.  I'M NOT EXPECTING YOU TO SAY "YES," EVERY TIME.

15     I KNOW YOU'VE TALKED TO MR. NAVARRO, AND I KNOW HIM.  BUT IF

16     YOU HEAR SOMETHING FROM ME THAT YOU'RE NOT SURE YOU

17     UNDERSTAND, MAKE SURE YOU SAY IT.  DON'T JUST SAY "YES."

18         AND I'D GIVE YOU ONE MORE CAUTION.  WE ALL KNOW

19     THIS, BUT IT'S AN IMPORTANT THING.  THE BEST EXAMPLE I CAN

20     THINK OF:  YOU LEAVE YOUR HOUSE AND YOU'RE GOING TO BE

21     GETTING IN YOUR CAR AND GO SOMEPLACE.  AND AS YOU CLOSE THE

22     FRONT DOOR -- HAVE YOU EVER HAD THIS HAPPEN -- IN THE BACK OF

23     YOUR MIND THERE'S SOMETHING MISSING.  WELL, IF YOU'RE LUCKY

24     WHEN YOU GET THERE, IT'S YOUR KEYS AND YOU CAN'T LEAVE.  BUT

25     THAT THING WE'VE ALL HAD, IN HINDSIGHT WE KNEW THAT THERE WAS

1   A QUESTION THERE, BUT WE WEREN'T FOCUSED ON THAT AND WE

2   IGNORED THAT.  BRING IT UP FRONT.  YOU ONLY GET ONE CHANCE

3   FOR THIS.  IF THERE'S SOMETHING THAT IS TROUBLING YOU, MAKE

4   SURE IT COMES TO THE TOP OF YOUR MIND, MAKE SURE THAT YOU'VE

5   THOUGHT ABOUT IT AND ASKED THE QUESTION.  THIS IS THE VERY

6   FIRST ONE OF ALL THESE QUESTIONS:  DO YOU UNDERSTAND

7   EVERYTHING I'VE SAID SO FAR?

8         THE DEFENDANT:  I DO.

9         THE COURT:  OKAY.  THEN I'LL START WITH THE

10   QUESTIONS.  AND THE FIRST ONE IS:  WHAT'S YOUR TRUE NAME?

11         THE DEFENDANT:  JEFFREY WALDEN DEVORE.

12         THE COURT:  HOW OLD ARE YOU?

13         THE DEFENDANT:  53.

14         THE COURT:  HAVE YOU EVER BEEN TREATED FOR MENTAL

15   ILLNESS?

16         THE DEFENDANT:  I'VE NOT.

17         THE COURT:  HAVE YOU EVER BEEN TREATED FOR DRUG

18   ADDICTION?

19         THE DEFENDANT:  NO.

20         THE COURT:  ARE YOU PRESENTLY UNDER THE INFLUENCE

21   OF ANY MEDICINE, ALCOHOLIC BEVERAGE, OR DRUG OF ANY KIND?

22         THE DEFENDANT:  I'M NOT.

23         THE COURT:  DID YOU RECEIVE A COPY OF THE

24   INDICTMENT?

25         THE DEFENDANT:  YES, I HAVE.

```
 1              THE COURT:  DID YOU READ IT?

 2              THE DEFENDANT:  YES, I HAVE.

 3              THE COURT:  I'M SORRY.  THERE'S MORE THERE.  IT'S

 4   DIVIDED INTO TWO THING.

 5              DID YOU UNDERSTAND IT?

 6              THE DEFENDANT:  YES, I HAVE.

 7              THE COURT:  DID YOU DISCUSS IT FULLY WITH

 8   MR. NAVARRO?

 9              THE DEFENDANT:  YES, I HAVE.

10              THE COURT:  DID YOU HAVE ENOUGH TIME WITH HIM TO BE

11   SURE THAT YOU GOT TO TELL HIM EVERYTHING THAT HE OUGHT TO

12   KNOW SO HE CAN ADVISE YOU PROPERLY?

13              THE DEFENDANT:  YES, I HAVE.

14              THE COURT:  MAY I HEAR THE GOVERNMENT WITH RESPECT

15   TO THE ELEMENTS OF THE CHARGE, PLEASE?

16              MS. CORBETT:  CERTAINLY, YOUR HONOR.  THERE ARE SIX

17   ELEMENTS TO THE OFFENSE THAT DEFENDANT IS CHARGED WITH, WHICH

18   IS A VIOLATION OF TITLE 18, UNITED STATES CODE SECTION

19   2252(A), (A)(2)(A) AS CHARGED IN THE INDICTMENT AND THEY ARE

20   AS FOLLOWS:  FIRST, DEFENDANT KNOWINGLY DISTRIBUTED A VISUAL

21   DEPICTION; SECOND, VISUAL DEPICTION HAD BEEN TRANSPORTED IN

22   INTERSTATE OR FOREIGN COMMERCE BY ANY MEANS, INCLUDING BY

23   COMPUTER.  THIRD, THE PRODUCTION OF SUCH VISUAL DEPICTION

24   INVOLVED THE USE OF A MINOR ENGAGING IN SEXUALLY EXPLICIT

25   CONDUCT.  FOUR, SUCH VISUAL DEPICTION WAS OF A MINOR ENGAGED
```

1    IN SEXUALLY EXPLICIT CONDUCT.  FIFTH, DEFENDANT KNEW THAT

2    SUCH VISUAL DEPICTION WAS OF SEXUALLY EXPLICIT CONDUCT; AND,

3    SIXTH, DEFENDANT KNEW THAT AT LEAST ONE OF THE PERSONS

4    ENGAGED IN SEXUALLY EXPLICIT CONDUCT WAS A MINOR.

5              THE COURT:  JUST A MATTER OF VOCABULARY.

6              DO YOU UNDERSTAND ALL THOSE WORDS?

7              THE DEFENDANT:  YES, I DO.

8              THE COURT:  YOU PUT THEM TOGETHER AND MAKE A CHARGE

9    OUT OF THEM.

10             DO YOU UNDERSTAND THE CHARGE, ITSELF?

11             THE DEFENDANT:  YES, I DO.

12             THE COURT:  AND INCLUDED IN THAT, ARE YOU SURE YOU

13   UNDERSTAND EXACTLY WHAT THE GOVERNMENT WOULD HAVE TO PROVE

14   BEFORE YOU COULD BE CONVICTED OF THAT CHARGE?

15             THE DEFENDANT:  YES.

16             THE COURT:  ALL RIGHT.  HAS ANYBODY MADE ANY

17   PROMISE OR COMMITMENT OF ANY KIND TO YOU IN CONNECTION WITH

18   YOUR DECISION TO CHANGE YOUR PLEA?

19             THE DEFENDANT:  NO.

20             THE COURT:  COULD HAVE.  I'D BE SURPRISED IF I EVER

21   HEARD A "YES" ANSWER THOUGH.  I HAVEN'T YET.

22             THE NEXT ONE IS EVEN MORE OF THAT.  DID ANYBODY DO

23   ANYTHING TO THREATEN YOU OR FORCE YOU TO CHANGE YOUR PLEA?

24             THE DEFENDANT:  NO.

25             THE COURT:  THAT ONE REALLY IS IMPORTANT BECAUSE

1    YOU DON'T WANT TO HEAR A "YES" ANSWER TO THAT, AND I NEVER

2    HAVE.  IMAGINE A SOCIETY WHERE THAT WOULDN'T BE TRUE.  SO IT

3    IS IMPORTANT.

4            I ASSUME, BASED ON COUNSEL'S ADVICE, BUT NOBODY'S

5    MADE A PROMISE OR COMMITMENT TO YOU ABOUT WHAT WOULD HAPPEN?

6            THE DEFENDANT:  THAT'S CORRECT.

7            THE COURT:  OKAY.  THE CONVICTION OF A FELONY,

8    WHICH THIS IS, MAY CAUSE A LOSS OF CIVIL RIGHTS, INCLUDING

9    THE RIGHT TO VOTE, THE RIGHT TO HOLD PUBLIC OFFICE, THE RIGHT

10   TO SERVE ON A JURY, AND THE RIGHT TO POSSESS ANY KIND OF

11   FIREARM.  AS TO THOSE, THE OPERATIVE WORD IS "MAY CAUSE."

12           SO IF ANY OF THOSE IS IMPORTANT TO YOU -- NUMBER

13   ONE, THE LAWS CHANGE FROM TIME TO TIME; AND, TWO, THE

14   DIFFERENT COMMUNITIES AND GOVERNMENTAL ENTITIES HAVE

15   DIFFERENT LAWS AND REGULATIONS.  SO IF YOU GET SOMETHING THAT

16   IS OF PARTICULAR IMPORTANCE TO YOU, DON'T ASSUME THAT JUST

17   BECAUSE I SAID THAT -- INQUIRE ABOUT IT AND MAKE SURE.

18           LET'S DWELL FOR A SECOND ON THE RIGHT TO BEAR ARMS.

19   THAT'S A VERY IMPORTANT RIGHT TO SOME PEOPLE AND IT'S A

20   CONSTITUTIONAL RIGHT SO I WANT TO DWELL ON IT FOR A SECOND.

21   AS SOON AS YOU GET CONVICTED OF A FELONY, WHAT USED TO BE A

22   VERY VALUABLE CONSTITUTIONAL RIGHT BECOMES A CRIME IF YOU

23   EXERCISE THAT RIGHT.  THE RIGHT IS GONE AND NOW IT'S A VERY

24   SERIOUS CRIME.  AND YOU REALLY HAVE TO UNDERSTAND THAT

25   BECAUSE IT IS SOMETHING -- POSSESSION OF A FIREARM CAN BE

1   ATTRIBUTED TO YOU IN A LOT OF WAYS.  AND IT'S SOMETHING THAT,

2   IF FIREARMS ARE IMPORTANT TO YOU, YOU'RE GOING TO WANT TO BE

3   VERY CAREFUL ABOUT BEING AROUND.  I'LL SAY THIS JUST IN CASE.

4   MOST PEOPLE -- I WON'T SAY MOST -- A HIGH PERCENTAGE OF

5   PEOPLE WHO HAVE FIREARMS THAT DON'T HAVE ANY ILLEGAL

6   INTENTION REALLY HAVE THEM TO PROTECT THEIR HOME AND THE

7   PEOPLE IN THEIR HOME.  AND YOU MAY OR MAY NOT KNOW THIS, BUT

8   THE STATISTICS ARE THAT GUNS SHOT IN HOMES DON'T HIT

9   CRIMINALS.  THEY HIT PEOPLE THAT ARE SUPPOSED TO BE IN THE

10  HOUSE.  AND I THOUGHT ABOUT IT MYSELF.  I WOULDN'T THINK

11  ABOUT HAVING ONE.  SOME PEOPLE COULD.  I KNOW SOMEBODY THAT

12  COULD AND THEY MAY BE RIGHT.  I KNOW FOR MYSELF I GOT THAT

13  GUN OUT BEFORE I SHOT IT.  I WANT TO BE SURE WHO I WAS

14  SHOOTING IT AT.  A GUY ON THE OTHER SIDE KNOWS HE'S SHOOTING

15  IT AT ME, AND HE'S GOING TO SHOOT FIRST.  TIME I'M SURE I'M

16  NOT SHOOTING THE WRONG GUY, HE'S ALREADY SHOT ME AND I'M

17  DEAD.  IF THAT'S A BETTER RIGHT TO VALUE, PUT IT BEHIND YOU,

18  BUT SEE IF YOU REALLY THINK YOU'D BE ABLE TO SHOOT FIRST AND

19  ASK QUESTIONS LATER BECAUSE THE OTHER GUY HAS NO QUESTION.

20  HE KNOWS WHO HE'S SHOOTING AT.  AND HE'S GOING TO KILL YOU IF

21  YOU'VE GOT A GUN.  SO ANYWAY I'D DWELL ON THAT.  IT'S VERY

22  IMPORTANT NOR SOME PEOPLE, IT MAY NOT BE FOR YOU.

23          IF YOU'RE NOT A CITIZEN -- AND I HAVEN'T ASKED THAT

24  EITHER, I DON'T AS A MATTER OF PRACTICE -- THE CONVICTION OF

25  A FELONY CAN CAUSE YOU TO BE SUBJECT TO DEPORTATION.  IF YOU

1    ARE A CITIZEN, THEN YOU DON'T HAVE TO WORRY ABOUT THAT.  I

2    DON'T ASK THAT QUESTION, PEOPLE WONDERING ABOUT WHY I CARE.

3    THAT'S THE REASON.  THE MAXIMUM PENALTY UNDER THE STATUTE FOR

4    WHAT I UNDERSTAND YOU'RE PLEADING TO IS 20 YEARS'

5    INCARCERATION, WITH A FIVE-YEAR MANDATORY MINIMUM, A FINE OF

6    $250,000 --

7              I TAKE IT THERE'S NO GAIN OR LOSS HERE.

8              MS. CORBETT:  NO, YOUR HONOR.

9              THE COURT:  -- AND $100 SPECIAL ASSESSMENT.  THE

10   STATUTORY MAXIMUM IS A PERIOD OF SUPERVISED RELEASE WHICH

11   COULD BE AS HIGH AS LASTING ALL YOUR LIFE.

12             DO YOU UNDERSTAND ALL THAT?

13             THE DEFENDANT:  I DO.

14             THE COURT:  AS TO SUPERVISED RELEASE, IT'S A NEW

15   CONCEPT.  IT'S IN THE STATE SYSTEM.  IT'S CALLED PAROLE.

16   IT'S ESSENTIALLY THIS, AND YOU JUST HAVE TO BE AWARE OF IT.

17             THERE'S A LOT OF CONDITIONS OF SUPERVISED RELEASE,

18   REPORTEDLY VISITING SOMETIMES PROTESTING, A LOT OF THINGS

19   LIKE THAT, THAT THERE'S NO OTHER LAW TO SUPPORT IT.

20             THE DEFENDANT:  THERE'S NO OTHER...

21             THE COURT:  THERE'S NO OTHER LAW TO SUPPORT THEIR

22   CONDITIONS OF SUPERVISED RELEASE.  IF YOU VIOLATE THOSE

23   CONDITIONS YOU CAN WIND UP BEING IN PRISON FOR THAT EVEN

24   THOUGH YOU HAVEN'T COMMITTED ANOTHER LAW, IN VIOLATION OF

25   ANOTHER LAW.  SO IT'S ONE OF THE DIFFICULT THINGS ABOUT

1   SUPERVISED RELEASE AND THEN THE CONDITIONS AREN'T ALWAYS

2   EASY.  THAT'S ONE ASPECT OF IT.  THE OTHER ONE IS IF YOU DO

3   VIOLATE ANOTHER LAW WHILE ON SUPERVISED RELEASE -- FORGIVE

4   THE VERNACULAR WAY OF SAYING IT -- IT COULD KIND OF

5   DOUBLE-DIP AND TAKE YOU SOMEPLACE AND PUNISH YOU FOR THE NEW

6   VIOLATION AND BRING YOU BACK TO ME AND ASK ME TO PUNISH YOU

7   FOR THAT.  SO THE SAME THING GETS YOU TWICE.  AS LONG AS

8   YOU'RE AWARE OF THAT, GENERALLY, THAT'S ALL I THINK YOU NEED

9   TO KNOW ABOUT SUPERVISED RELEASE.

10          DO YOU UNDERSTAND ALL OF THAT?

11          THE DEFENDANT:  YES, I DO.

12          THE COURT:  THE SENTENCING GUIDELINES -- HAVE YOU

13  DISCUSSED THE SENTENCING GUIDELINES WITH MR. NAVARRO?

14          THE DEFENDANT:  YES, I HAVE.

15          THE COURT:  GUIDELINES, AS I'M SURE YOU KNOW FROM

16  TALKING WITH HIM, IS THEY USED TO BE MANDATORY AND THEY HAD

17  SOME ESCAPE BOUNDS, ONE OF WHICH I'LL MENTION.  BUT JUDGES

18  WERE REQUIRED TO READ THEM AND APPLY THEM AS IF THEY WERE

19  LAWS.  THAT'S CHANGED NOW.  HOW MUCH HAS CHANGED, NOBODY

20  KNOWS.  MY OWN JUDGEMENT IS IT PROBABLY HASN'T CHANGED AT

21  ALL.  MIGHT HAVE GOTTEN WORSE OR BETTER, BUT THE CASES ARE

22  GOING TO DECIDE THAT JUDGES ARE REQUIRED TO LOOK AT THEM.

23  AND THE TEST NOW ON APPEAL IS WHETHER THE SENTENCE WAS

24  REASONABLE WHICH IS A BRAND NEW STANDARD, AS FAR AS I KNOW.

25  NOBODY KNOWS WHAT THAT MEANS.

1           SO IT'S LIKELY, I THINK, THAT THE COURTS WHO SAID

2      THEY DON'T LIKE GUIDELINES -- IT'S LIKELY THEY'RE GOING TO

3      SAY THAT ANYTHING THAT WOULDN'T BE A DEPARTURE UNDER THE

4      GUIDELINES IS NOT A REASONABLE SENTENCE, BUT WE DON'T KNOW

5      THAT.  SO WE'RE IN AN A PERIOD OF TRANSITION WHERE LAWYERS,

6      FRANKLY, DON'T KNOW WHAT TO DO.  BEFORE WE HAD GUIDELINES,

7      THE JUDGES TOOK THE TOTALITY OF CIRCUMSTANCES THAT EVERYTHING

8      ABOUT THE CRIME -- WHO THE VICTIM WAS, IF THEY WERE HURT,

9      WHAT THE GUYS MOTIVE WAS, WHAT THE IMPACT OF HIS FAMILY

10     ARE -- ALL THOSE THINGS, THEY PUT THEM ALL TOGETHER AND COME

11     UP WITH A SENTENCE.  I DON'T MEAN TO PHILOSOPHY THIS WITH

12     YOU.  THE JUSTIFICATION FOR THAT WAS THE BELIEF THAT ALL

13     ANYBODY CARED ABOUT WAS WHAT HAPPENED IN THIS CASE.  AND IT

14     WAS ABOUT, SIMPLY, YOU HAD A JUDGE WHO WAS SUPPOSED TO BE

15     CHOSEN TO BE BALANCED AND FAIR.  AND HE WOULD HAVE TO SAY TO

16     YOU, "I KNOW YOU THINK THIS SENTENCE IS TOO HIGH BUT IT'S NOT

17     AS HIGH AS THEY THOUGHT."  AND SOMEBODY'S GOT TO DO IT AND

18     IT'S ME.  AND YOU DON'T HAVE TO THINK IT WAS FAIR.  I HOPE

19     YOU THINK WAS FAIR.  AND THEY DON'T HAVE TO THINK IT'S FAIR

20     EITHER, BUT IT'S IN THERE SOMEPLACE AND SOMEBODY'S GOT TO

21     DECIDE.  THAT WAS WHAT THE JUSTIFICATION FOR THAT WAS.

22           THE GUIDELINES TOOK AWAY ALL OF THE SUBJECT OF

23     THINGS.  THE GUIDELINES JUST TOOK THE FACTORS -- I'M SURE,

24     MR. NAVARRO, YOU WENT OVER THOSE FACTORS.  AND THEY

25     ELIMINATED THOSE THINGS THAT MADE BOTH ON THE OFFENDER'S SIDE

1   AND ON THE VICTIM'S SIDE DIFFERENT.  FIFTY-THOUSAND DOLLARS

2   TAKEN FROM A SENIOR CITIZEN, WHICH IS HIS LIFE SAVINGS WHICH

3   IS ALL HE'S EVER HAD, IS A LITTLE DIFFERENT FRO TAKING IT

4   FROM A BANK, BUT THE GUIDELINES DIDN'T SAY SO.  PUTTING A

5   SINGLE MOTHER IN JAIL WHO'S ONLY COMMITTED ONE CRIME AND DID

6   IT BECAUSE SHE NEEDED IT FOR THE KIDS, THE VICTIM'S NEVER

7   WANTED THEIR MOTHER TO GO TO JAIL.  THEY REALLY NEVER DID.

8   THEY DIDN'T WANT THE DEATH SENTENCE EITHER.  SO THE

9   GUIDELINES MADE NO DIFFERENCE.  THE DEPARTURE MECHANISMS WERE

10  TITLED BY THE GUIDELINES THEMSELVES BECAUSE SOME JUDGES WERE

11  VERY RELUCTANT TO DEPART, OTHERS WERE NOT.  SO THE TRUTH IS

12  AS TO THOSE FACTORS IT WAS WORSE.  BY EXPLAINING THAT TO YOU

13  YOU'RE LOOKING AT SOMEBODY WHO DID NOT EVER THINK THE

14  GUIDELINES WERE THAT.  AND THE COURT NEVER SAID THAT.  THEY

15  WAITED 16 YEARS TO FINALLY ADDRESS THE QUESTION, THEY AGREED

16  WITH ME.  BUT I THINK THE OTHER WAY WAS BETTER.  I WILL BE

17  OPEN TO THOSE KINDS OF ARGUMENTS.  THE MANDATORY MINIMUM, AS

18  FAR AS I KNOW, IS STILL A LITTLE LOW.  BEYOND THAT, I HAVE NO

19  IDEA WHATEVER THEY THINK.  THEY WILL ARGUE -- LAWYERS DON'T

20  KNOW HOW TO ANYMORE.  AND THAT'S TOO BAD IT WILL CHANGE, BUT

21  WHAT THE TRUTH BEFORE WAS -- BECAUSE IT WAS ALWAYS TRUE,

22  THERE'S LOTS OF GUILTY PLEAS.  LAWYERS PRACTICE IN THE SAME

23  COURT.  IT'S THE SAME SMALL GROUP OF LAWYERS.  THEY ALL KNOW

24  WHAT WAS HAPPENING.  AND THEIR AGREEMENTS.  SO THEY KNEW WHAT

25  TO AGREE TO AND THEY ALSO KNEW WHEN NEGOTIATIONS BROKE DOWN

```
 1    WHY THEY HAD AND THEY ALL KNEW WHAT THE JUDGES KNEW.  SO THAT
 2    WAS THE BEDROCK THAT KEPT IT FROM BEING IN GREAT DISPARITY
 3    AND ALL LAWYERS KNEW WHAT KINDS OF THINGS TO ARGUE.  NOW THEY
 4    DON'T KNOW WHAT JUDGES DO.  THEY JUST DON'T KNOW WHAT THEY
 5    DO.  SO WE'RE IN A VERY DIFFICULT TIME.  YOU'RE IN IT.  I'M
 6    SORRY FOR THAT.  WHAT I THINK YOU'LL FIND IS THE JUDGES, ME
 7    INCLUDED, DURING THIS UNCERTAIN PERIOD IT'S PROBABLY NOT
 8    GOING TO BE GOOD TO GO VERY FAR OFF THE BEATEN PATH BECAUSE
 9    IF WE ALL GO, WE SPLATTER OURSELVES AROUND THE TENDENCY TO
10    ENFORCE THE GUIDELINES RIGIDLY.  THE WAY THEY WERE FIRST DONE
11    IS GOING TO BE PRETTY HIGH.  SO EVEN THE JUDGES THAT THINK
12    THEY SHOULD BE MORE FLEXIBLE AND LOOK HARDER AT THE
13    INDIVIDUAL'S PERSONAL CIRCUMSTANCES, THEY'RE GOING TO FIND IT
14    HARDER.  THAT'S ABOUT ALL I THINK THERE IS NO KNOW ABOUT
15    THAT.  THAT'S WHERE WE ARE.  AND MY OWN TENDENCY WILL BE NOT
16    TO LET THERE BE OBVIOUS MISCARRIAGES BEFORE ME AT THE RISK OF
17    WHATEVER IT IS.  YOU HAVE A VERY GOOD HEAD ON YOU.  BUT I HAD
18    A CASE OF RULING IN THE GUIDELINES WHERE I SPOKE FOR ONE OF
19    THE VERY FEW TIMES IN MY LIFE THE FIRST PERSON FROM THE BENCH
20    IN AN OPINION FORM.  AND THERE WASN'T A DRY EYE IN THIS
21    PLACE, NOT ONE INCLUDING THE MARSHAL.  NOBODY THOUGHT IT WAS
22    RIGHT AND THERE WAS NO WAY OUT.  THAT WAS RIDICULOUS.  HOW
23    HARD WOULD IT BE TO HAVE THE U.S. ATTORNEY AND THE JUDGE AND
24    THE DEFENSE COUNSEL AND PROBATION OFFICER ALL THINK IT'S
25    WRONG?  IT IS WRONG.  THEY DON'T NEED TO HAVE AN APPELLATE
```

1    QUESTION ABOUT THAT, BUT I'VE HAD THAT CASE.  SO MY TENDENCY

2    IS NOT TO LET THAT HAPPEN, IF I CAN AVOID IT.  BUT I HAVE NO

3    IDEA WHAT YOUR CIRCUMSTANCES ARE.  I WILL JUDGE THE CRIME.  I

4    WON'T JUDGE YOU.  IT'S DIFFERENT.  I THINK THAT'S ALL THERE

5    IS THERE SO SAY ABOUT THAT.

6          CAN I HEAR HOW THE GOVERNMENT WOULD PROVE THE CASE

7    IF IT WENT TO TRIAL?

8          MS. CORBETT:  YES, YOUR HONOR.  THE GOVERNMENT

9    WOULD PROVE THROUGH THE COMMUNICATIONS THAT DEFENDANT HAD

10   WITH AN UNDERCOVER AGENT THAT DEFENDANT AND UNDERCOVER AGENT

11   MET IN 2003.  AND THEN IN 2004, DEFENDANT AT THAT TIME OWNED

12   A COMPUTER AND HE USED THAT COMPUTER TO DOWNLOAD IMAGES FROM

13   THE INTERNET.  SOME OF THOSE IMAGES WERE OF MINORS ENGAGED IN

14   SEXUALLY EXPLICIT CONDUCT.  DEFENDANT SAVED SOME OF IMAGES TO

15   HIS COMPUTER AND HE ALSO HAD THE ABILITY TO SAVE THEM ONTO

16   COMPACT DISK, C.D.

17         ON DECEMBER 15, 2004, DEFENDANT AND THE UC HAD A

18   CONVERSATION IN WHICH THE DEFENDANT ASKED THE UC IF HE WAS

19   INTERESTED IN A C.D. THAT DEFENDANT HAD MADE CONTAINING SOME

20   PICTURES.  AND THE UC AND DEFENDANT HAD AGREED TO MEET.

21   DEFENDANT INDICATED THAT HE WOULD BRING THE C.D. WITH HIM.

22   THEY MET THEN ON DECEMBER 17, 2004 AT A RESTAURANT IN BEVERLY

23   HILLS, CALIFORNIA.  AT THAT TIME, DEFENDANT GAVE THE UC A

24   C.D. BEARING THE WORDS "YOUTHFUL BOB."  THE C.D. CONTAINED --

25   DEFENDANT KNEW THAT C.D. CONTAINED APPROXIMATELY A HUNDRED

1    IMAGES OF MINORS ENGAGED IN SEXUALLY EXPLICIT CONDUCT.

2          FURTHERMORE, THE PRODUCTION OF THESE IMAGES

3    INVOLVED THE USE OF ACTUAL MINORS ENGAGED IN SEXUALLY

4    EXPLICIT CONDUCT.  MANY OF THE IMAGES OF CHILD PORNOGRAPHY

5    INVOLVED PREPUBESCENT MINORS, MINORS UNDER THE AGE OF 12.

6          AND, IN ADDITION, THOSE IMAGES THAT DEFENDANT

7    DISTRIBUTED ON THE C.D. HAD BEEN TRANSPORTED PREVIOUSLY IN

8    INTERSTATE FOREIGN COMMERCE.

9          THE COURT:  I TAKE IT ALL OF THOSE THINGS -- MR.

10   NAVARRO, DO YOU AGREE TO THE EXTENT THAT SHE DIDN'T SPECIFY

11   EXACTLY HOW THEY WERE GOING TO BE PROVED, IT WAS SELF-EVIDENT

12   FROM WHAT SHE DID SAY, I THOUGHT?

13         MR. NAVARRO:  YOU LOST ME, YOUR HONOR.

14         THE COURT:  YOU DID IT SO -- I'M SORRY.  LET ME GET

15   YOU BACK UP.  IT'S A HOW QUESTION, HOW YOU'RE GOING TO PROVE

16   IT.  THE EASIEST EXAMPLE IS THE LAST ONE, YOU DIDN'T QUITE

17   TELL ME HOW YOU WERE GOING TO PROVE IT, BUT YOU SAID IT WAS

18   COMPUTERS AND IT WAS DOWNLOADED.  WE'RE TRYING -- WE'RE

19   ESTABLISHING AN INDEPENDENT BASIS.  IN FACT, I THOUGHT SHE

20   DID IT, EVEN THOUGH SHE WASN'T EXPLICIT ABOUT ALL THE

21   SPECIFICS OF THE ELEMENTS OF HOW SHE WOULD PROVE IT.  I WAS

22   JUST ASKING IF YOU AGREED.

23         MR. NAVARRO:  YOUR HONOR, I DO AGREE WITH THAT.  I

24   DON'T KNOW THAT IT'S NECESSARY TO HAVE THE GOVERNMENT

25   INDICATE FOR THE RECORD THAT SOME OF THE IMAGES WERE OF

1    PREPUBESCENT CHILDREN -- I DON'T KNOW THAT THAT'S A

2    REQUIREMENT OF THE CODE.

3           THE COURT:  NO, THAT WHAT SHE DID DO WAS ESTABLISH

4    THAT SHE -- AT A TRIAL SHE COULD PRODUCE EVIDENCE THAT WOULD

5    COVER ALL THE ELEMENTS.

6           MR. NAVARRO:  YES.

7           THE COURT:  AS TO THE OTHER, I THINK, MR. DEVORE,

8    YOU'RE GOING TO WANT SOME HELP FROM YOUR COUNSEL IN A MINUTE,

9    WHICH SHE'S TRYING TO GIVE YOU RIGHT NOW.  OFTEN, THERE ARE

10   AGREEMENTS THAT -- THE NEXT QUESTION I WOULD HAVE IS:  DID

11   YOU DO EVERYTHING THAT SHE SAID THAT YOU DID?  TO A DEGREE,

12   IF I ASKED THAT QUESTION, THAT'S ENOUGH.  AND IT DOESN'T

13   INVOLVE ANY OF THOSE QUESTIONS, NOT EXACTLY WHAT THE PROOF

14   LOOKED LIKE.

15          SO IF I JUST ASK THAT QUESTION:  DID YOU DO

16   EVERYTHING SHE SAID YOU DID WITH THE KNOWLEDGE AND INTENT

17   THAT SHE ATTRIBUTED TO YOU, IF ANY, YOU CAN ANSWER "YES."

18   LET HIM ANSWER FIRST.

19          MR. NAVARRO:  I'M SORRY, YOUR HONOR?

20          THE COURT:  CAN HE ANSWER "YES" TO THE QUESTION I

21   JUST POSED?

22          MR. NAVARRO:  CAN I HAVE A MINUTE, YOUR HONOR.

23          (COUNSEL CONFERS WITH DEFENDANT.)

24          THE DEFENDANT:  WOULD YOU ASK ME THE QUESTION

25   AGAIN?

1      THE COURT:  LET ME HELP YOU.  I DON'T WANT TO

2  CONFUSE YOU MORE.  WE'RE AT THE STAGE WHERE I WAS SAYING THAT

3  ONE OF THE THINGS YOU HAVE TO DO IS MAKE SURE THAT THE

4  GOVERNMENT COULD PROVE, WITHOUT YOUR ADMITTING -- AND THAT'S

5  CALLED ESTABLISHING AN INDEPENDENT BASIS OF FACT -- THIS IS

6  WHAT THE EVIDENCE WOULD BE IF YOU DIDN'T SAY IT.  THEN I HAVE

7  TO SAY THAT WOULD SATISFY AT LEAST ONE JUROR, OR MIGHT

8  SATISFY AT LEAST ONE JUROR.  SO SHE HAD SOME EXTRINSIC STUFF

9  IN THERE WHICH WASN'T STUFF THAT YOU DID.  IT WAS JUST STUFF

10  THAT SHE SAID THEY WOULD PROVE, BUT DIDN'T GIVE THE ELEMENTS.

11      I'M JUST TRYING TO PHRASE A QUESTION AND THEN --

12  SEE IF THIS MAKES IT CLEARER TO YOU.  I MAY SOME DAY HAVE TO

13  SEE WHAT THESE THINGS WERE.  I DON'T HAVE TO SEE IT TODAY AND

14  I MAY NOT HAVE TO SEE IT EVER.  IT'S NOT MY PRACTICE TO GO

15  AROUND AND LOOK AT ALL THE EVIDENCE THAT WOULD HAVE COME IN

16  AT A TRIAL IF SOMEONE WERE TO PLEAD GUILTY.  FOR SENTENCING

17  PURPOSES, I MAY HAVE TO SEE IT SOME DAY, I MAY HAVE NOT TO.

18  BUT I KNOW I DON'T HAVE TO TODAY.  SO ALL I'M TRYING TO DO IS

19  MAKE SURE THAT YOU HAVE TO NOW FOR SENTENCING PURPOSES -- I'M

20  SORRY -- FOR PLEADING PURPOSES YOU JUST HAVE TO SAY I DID THE

21  ELEMENT OF THE CRIME.

22      AND MY QUESTION TO MR. NAVARRO WHEN I SAID YOU

23  PROBABLY NEED SOME HELP FROM HIM IS:  IF I JUST ASKED DID YOU

24  DO EVERYTHING THAT SHE SAID YOU DID, WITHOUT ADMITTING WHAT

25  THE CONTENTS OF THESE THINGS WERE, THEN DOES THAT COVER THE

1    GROUND?  IT SEEMS TO ME IT DOES, BUT I DON'T WANT YOU TO MAKE

2    ADMISSIONS THAT GO BEYOND WHAT YOU SHOULD.  AND I DON'T WANT

3    TO HAVE AN ISSUE LEFT ABOUT WHETHER YOU ACTUALLY ADMITTED THE

4    ELEMENTS.

5              THE DEFENDANT:  YES, IT DOES.  YES.

6              THE COURT:  MR. NAVARRO, DOES THAT SATISFY YOU?

7              MR. NAVARRO:  YES, IT DOES, YOUR HONOR.

8              THE COURT:  DOES IT SATISFY THE GOVERNMENT?

9              MS. CORBETT:  YES, YOUR HONOR.

10             THE COURT:  WE'RE GOING TO NOW MOVE TO THE -- I DO

11   HAVE TO COVER A COUPLE MORE THINGS ABOUT THE GUIDELINES.  WE

12   TALKED ABOUT GUIDELINES, SENTENCING.

13             DO YOU UNDERSTAND IF THE -- HOW THE GUIDELINES WORK

14   WITH RESPECT TO DEPARTURES?

15             THE DEFENDANT:  DEPARTURES?

16             THE COURT:  DEPARTURES.

17             THE DEFENDANT:  I DON'T UNDERSTAND THE USE OF THAT

18   WORD.

19             THE COURT:  THAT'S WHY I'M ASKING.  AGAIN, LET ME

20   BE AS CLEAR AS I CAN.  I'M SORRY TO TAKE SO LONG.  ACTUALLY,

21   I HATE TO KEEP THE MARSHALS HANGING AROUND.

22             ANYWAY, THE WAY THE GUIDELINES WORK -- REMEMBER I

23   SAID THEY HAD SOME FLEXIBILITY AND IT WAS NOT NECESSARILY

24   GOOD.  THE WAY THEY DID WORK WAS YOU'D BUILD UP TO GET A

25   GUIDELINE SENTENCE UP.

1          THE DEFENDANT:  SO YOU MEAN IN TERMS OF YOUR

2    FREEDOM TO DEPART FROM THE GUIDELINES?

3          THE COURT:  YES.

4          THE DEFENDANT:  YES, I DO UNDERSTAND THAT.

5          THE COURT:  OKAY.

6          THE DEFENDANT:  YES.  I DO UNDERSTAND THAT.

7          THE COURT:  RIGHT.  THEN NOW I'M TOUCHING BASES

8    AGAIN.  I SWITCHED.  I'M SORRY.  CLEARLY WASN'T TRUE AND IT

9    WASN'T CLEAR.

10          DO YOU UNDERSTAND THAT THE PROBATION OFFICER WILL

11    PREPARE A PRESENTENCE REPORT AND INVESTIGATION -- THEY WILL

12    PRODUCE A RECOMMENDED SENTENCE UNDER THE GUIDELINES AND THEY

13    WILL HAVE A LOT OF INFORMATION, AMONG WHICH WOULD BE IF YOU

14    HAD A CRIMINAL HISTORY EVEN IF YOU'VE FORGOTTEN IT, THEY

15    MIGHT DISCOVER IT, AND ANYTHING ELSE THAT GOES TO WHAT YOUR

16    WORK HISTORY HAS BEEN AND A WHOLE BUNCH OF THINGS LIKE THAT

17    WHICH, IN FACT, IS MORE USEFUL BEFORE THE GUIDELINES.  BUT IT

18    WOULD BE A LOT OF INFORMATION AND THEY WILL MAKE A

19    RECOMMENDATION WHICH MIGHT BE DIFFERENT FROM WHAT MR. NAVARRO

20    HAS TOLD YOU YOU MIGHT EXPECT.

21          THE DEFENDANT:  I UNDERSTAND THAT.

22          THE COURT:  IF AFTER THE SENTENCE THE GOVERNMENT

23    WILL HAVE A RIGHT TO APPEAL FROM THE SENTENCE, AS WILL YOU.

24          DO YOU UNDERSTAND THAT?

25          THE DEFENDANT:  YES, I DO.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1          THE COURT:  AND, FINALLY, IN THE FEDERAL SYSTEM

2     THERE IS NO PAROLE THAT WOULD HAPPEN IF YOU'RE SENTENCED TO A

3     PERIOD OF TIME IN IMPRISONMENT.  YOU SERVE THE WHOLE TIME,

4     SUBJECT ONLY TO GOOD TIME.

5          THE DEFENDANT:  I UNDERSTAND.

6          THE COURT:  DO YOU KNOW WHAT GOOD TIME IS?

7          THE DEFENDANT:  I HAVE BEEN TOLD THAT IT COULD BE

8     15 PERCENT.

9          THE COURT:  WHAT IT IS -- YOU'RE NOT NEARLY AS OLD

10    AS I AM, BUT YOU'RE OLD ENOUGH PROBABLY TO REMEMBER WHAT WE

11    CALL TIME OFF FOR GOOD BEHAVIOR.  IT'S THE HINDSIGHT ASPECT

12    OF IMPRISONMENT IN SENTENCING.  THEY CAN LOOK AT WAY YOU

13    BEHAVED WHILE IN, AND LET YOU OUT EARLY FOR THAT.  THEY CAN

14    NEVER REASSESS THE CRIME ITSELF.  THE CRIME ITSELF CALLS FOR

15    THIS PENALTY.

16          DO YOU FOLLOW THAT?

17          THE DEFENDANT:  I DO.

18          THE COURT:  OKAY.  NOW, I'M GOING TO SWITCH THE

19    SUBJECT OF TRIAL BY JURY.  I DO THIS PRETTY QUICKLY, BUT

20    THESE ARE THE IMPORTANT RIGHTS SO MAKE SURE THAT YOU DO SO IF

21    YOU MISS.  IF YOU PERSIST IN A NOT GUILTY PLEA, AS YOU HAVE

22    THE RIGHT TO DO, YOU WILL HAVE A TRIAL BEFORE A JURY OF

23    ULTIMATELY TWELVE PEOPLE SELECTED BY A PROCESS WHICH IS

24    DESIGNED TO MAKE SURE THAT IT'S A FAIR JURY THAT WILL GIVE

25    YOU A FAIR TRIAL.  INCLUDED IN THAT PROCESS, YOU HAVE THE

1    RIGHT TO HAVE COUNSEL PARTICIPATE, HAVE THE GOVERNMENT PAY

2    FOR THAT, AND TO HAVE COUNSEL THROUGHOUT THE PROCEEDINGS AND

3    HAVE THE GOVERNMENT PAY FOR THAT IF YOU CAN'T AFFORD IT.

4    COUNSEL DURING THE SELECTION PROCESS WILL HAVE THE RIGHT TO

5    ACTUALLY HAVE SOME OF THE JURORS EXCUSED AND REPLACED BY

6    OTHERS TO MAKE SURE THAT IT IS A FAIR BALANCE.  AT THE TRIAL,

7    ITSELF, YOU HAVE THE RIGHT TO SEE AND HEAR ALL THE WITNESSES

8    WHO WILL TESTIFY AGAINST YOU AND HAVE THEM CROSS-EXAMINED IN

9    YOUR DEFENSE.  YOU HAVE THE RIGHT TO TESTIFY IF YOU WANT TO.

10   IF YOU DO THAT, YOUR TESTIMONY IS LIKE ANYBODY ELSE'S.  YOU

11   ALSO HAVE THE RIGHT TO DECLINE TO TESTIFY.  IF YOU DON'T

12   TESTIFY THE COURT INSTRUCTS THE JURY THAT THEY CAN'T DRAW ANY

13   INFERENCE OF GUILT OR ANY OTHER INFERENCE FROM THAT FACT.

14   THEY SIMPLY HAVE TO DECIDE ON THE BASIS OF THE EVIDENCE.

15   I'LL COME BACK DO THAT.

16           YOU HAVE THE RIGHT TO THE ISSUANCE OF SUBPOENAS AND

17   COMPULSORY PROCESS TO COMPEL WITNESSES WHO MIGHT NOT WANT TO

18   TESTIFY FOR YOU TO COME AND TESTIFY ANYWAY AND TO GATHER

19   OTHER EVIDENCE FOR YOUR DEFENSE.  IF YOU OR YOUR COUNSEL

20   THINKS A MISTAKE OF LAW WAS MADE AT TRIAL, YOU HAVE A RIGHT

21   TO APPEAL FROM THAT.

22           SO DO YOU UNDERSTAND ALL THAT?

23           THE DEFENDANT:  YES, I DO.

24           THE COURT:  THE CRITICAL THING IS AT THE TRIAL YOU

25   HAVE THE PRESUMPTION OF INNOCENCE.  I'M SURE HE DISCUSSED

1  THAT.  I SAY IT A LITTLE BIT DIFFERENTLY, BUT THIS IS WHAT I

2  STARTED TO SAY BEFORE I WOULD COME BACK TO IT.  TRIALS ARE

3  THE WAY WE FIND OUT WHO DID THINGS.  AND I HOPE WHOEVER HEARS

4  THIS IS SACRILEGIOUS -- IS NEITHER RELIGIOUS NOR

5  SACRILEGIOUS -- TO ME.  WE DON'T DO GOD'S JUSTICE HERE.  IF

6  THAT KIND OF GOD WANTED US TO DO HIS JUSTICE, I SUSPECT THAT

7  HE WOULD GIVE US MORE INFORMATION.  SO THE WAY WE FIND OUT

8  WHETHER PEOPLE ARE GUILTY OF CRIMES IS TO HAVE A JURY

9  CHALLENGE THAT.  PEOPLE CONFESS TO CRIMES THEY DIDN'T COMMIT.

10 THERE ARE ALL KINDS OF THINGS THAT CAN HAPPEN TO PUT A PERSON

11 RIGHT WHERE YOU ARE AND THE TRUTH IS WE'LL NEVER KNOW.  THE

12 BEST WE CAN DO IS ASK A JURY IF THEY'RE CONVINCED BEYOND A

13 REASONABLE DOUBT THAT YOU DID DO THE THINGS THAT THE

14 GOVERNMENT BELIEVES THAT YOU DID AND THAT THEY'VE CHARGED YOU

15 WITH.  IF THE JURY SAYS, NO, I'M NOT CONVINCED.  IT DOESN'T

16 MATTER.  IT DOES MATTER IF YOU STOOD HERE RIGHT ON THE

17 THRESHOLD OF TELLING ME AND ANYBODY ELSE, YES, I DID IT.  IF

18 THEY DON'T SAY YOU DID IT, YOU DIDN'T DO IT.  I DON'T KNOW IF

19 YOU EVER HEARD THIS ON THE RADIO.  IT DRIVES ME CRAZY.

20 PEOPLE WILL SAY, "HE PLED INNOCENT."  NOBODY IN THIS COUNTRY

21 HAS EVER PLED INNOCENT AND NOBODY WOULD.  YOU PLEAD NOT

22 GUILTY.  AND THAT PUTS THE GOVERNMENT WITH THE BURDEN OF

23 PROVING IT.  THE PRESUMPTION OF INNOCENCE SAYS THAT WHEN YOU

24 WALK IN, YOU'RE STILL INNOCENT.  YOU DON'T BECOME GUILTY

25 UNTIL THE JURY SAYS, THIS IS MY VERDICT TWICE.  SO SAY YOU

```
 1    ALL, AND THEN ONE AT A TIME.  THAT'S THE POINT.  BEFORE THAT
 2    YOU'RE NOT.  AND THE WAY I THINK ABOUT THIS -- THIS IS WHAT I
 3    SAID TO THE JURY -- THE WORDS TO THE JURY ARE CONVINCED
 4    BEYOND A REASONABLE DOUBT.  THE WAY I THINK ABOUT IT IS IF
 5    THEY SAY, "I DON'T THINK SO," THAT'S PRETTY EASY.  I DON'T
 6    THINK HE'S GUILTY.  IF THEY SAY, "I DON'T KNOW," NOT GUILTY.
 7    IF THEY SAY, "I THINK SO," THAT'S A DIFFERENT BURDEN OF
 8    PROOF.  IT'S A CIVIL BURDEN OF PROOF, STILL NOT GUILTY.  IF
 9    THEY SAY, "I'M PRETTY SURE," THAT'S CLEAR AND CONVINCING.
10    IT'S A DIFFERENT STANDARD, STILL NOT GUILTY.  DID HE DO IT?
11    YES.  SURE, BEYOND A REASONABLE DOUBT.  IT'S NOT PERFECT, BUT
12    IT'S BEYOND ALL THE REST OF THOSE THINGS.  TWELVE PEOPLE HAVE
13    TO SAY, "YES, HE DID IT."  I DON'T THINK YOU CAN THINK BEYOND
14    A REASONABLE DOUBT.  I THINK YOU KNOW BEYOND A REASONABLE
15    DOUBT AND THAT WOULD BE BEYOND ANY DOUBT.  WE SAY WE KNOW A
16    LOT OF THINGS.  THAT'S THE STANDARD.  AND THAT'S IMPORTANT TO
17    UNDERSTAND BECAUSE WE'RE NOT GOING TO DO IT IF YOU PLEAD
18    GUILTY.  THERE WILL BE NO TRIAL.  WE'LL NEVER FIND OUT IF
19    THEY HAVEN'T MET THE BURDEN OF PROOF.  AND BECAUSE IT'S THE
20    ONLY WAY ANYBODY WILL EVER REALLY KNOW FOR HUMAN PURPOSES
21    EXACTLY WHAT YOU DID AND THAT'S THE RIGHT YOU ARE GETTING
22    READY TO GIVE UP.  YOU HAVE TO UNDERSTAND.
23              DO YOU?
24              THE DEFENDANT:  I DO.
25              THE COURT:  I'M SORRY TO LECTURE YOU.  YOU'RE
```

```
 1   OBVIOUSLY AN INTELLIGENT MAN, BUT YOU KNOW I DON'T REALLY

 2   WANT IT TO HAPPEN THAT I EVER SENTENCE SOMEBODY THAT DIDN'T

 3   UNDERSTAND IT.  HOW DEPRESSING WOULD THAT BE?  NOBODY IN THIS

 4   ROOM WANTS ME EVER TO DO THAT.  SO I DRAG ON WITH IT PROBABLY

 5   A LITTLE BIT MORE THAN SOMEBODY LIKE YOU NEEDS TO.  HAVE I

 6   TOUCHED ON ALL THE BASES?

 7              MS. CORBETT:  YES, YOUR HONOR.

 8              THE COURT:  MR. NAVARRO?

 9         MR. NAVARRO:  YES, YOUR HONOR.

10              THE COURT:  THEN AS TO THE CHARGE OF DISTRIBUTION

11   OF CHILD PORNOGRAPHY AS CHARGED IN COUNT 1 OF THE INDICTMENT,

12   HOW DO YOU PLEAD?  GUILTY OR NOT GUILTY?

13              THE DEFENDANT:  GUILTY.

14              THE COURT:  MR. NAVARRO, YOU WAIVE THERE'S A

15   FACTUAL BASIS FOR YOUR CLIENT'S PLEA?

16         MR. NAVARRO:  I DO, YOUR HONOR.

17              THE COURT:  IF HE DOES PLEAD GUILTY, DO YOU HAVE

18   ANY REASON WHY IT WOULDN'T BE IN HIS INTEREST FOR ME TO

19   ACCEPT THE PLEA?

20         MR. NAVARRO:  NO, YOUR HONOR.

21              THE COURT:  I ASSUME HE JUST HAS PLED GUILTY BEFORE

22   I MAKE THE FINDINGS.  LAST CHANCE TO CHANGE YOUR MIND.

23         DO YOU WANT TO TAKE TO MR. NAVARRO?

24              THE DEFENDANT:  NO, YOUR HONOR.  IT STANDS.

25              THE COURT:  I TRY TO DO THAT AS THE LAST THING.
```

```
1            THE COURT FINDS THAT THE DEFENDANT IS FULLY
2    COMPETENT AND CAPABLE OF ENTERING AN INFORMED PLEA AND IS NOT
3    STANDING TRIAL AT THIS TIME.  HE UNDERSTANDS HIS
4    CONSTITUTIONAL AND STATUTORY RIGHTS AND WISHES TO WAIVE THEM
5    AND HIS PLEA OF GUILTY IS A KNOWING AND VOLUNTARY PLEA,
6    SUPPORTED BY AN INDEPENDENT BASIS AND FACT WHICH COVERS EACH
7    OF THE ESSENTIAL ELEMENTS OF THE CHARGE.  BASED ON FINDINGS
8    THAT I JUST MADE, I HEREBY ACCEPT YOUR GUILTY PLEA AND PLED
9    YOU GUILTY.
10            TO WHATEVER EXTENT THE MARSHALS OR COUNSEL OR,
11   INDEED, YOU, FEEL THAT I'VE OVERDONE THIS, YOU'RE PROBABLY
12   RIGHT.  IT JUST MAKES ME FEEL GOOD.  I MEAN I KNOW IT TAKES
13   TIME AND I'M NOT SURE HOW MUCH DIFFERENCE IT ACTUALLY MAKES
14   ON A CASE-TO-CASE BASIS, BUT IT IS IMPORTANT AND IT MAKES ME
15   FEEL GOOD.
16            SENTENCING WILL BE WEDNESDAY, JULY 20TH, 2005, AT
17   10:00 O'CLOCK.
18            ANYTHING ELSE?
19            IF NOT, WE'LL RECESS.
20            MR. NAVARRO:  NO, YOUR HONOR.  THANK YOU.
21            MS. CORBETT:  NO, YOUR HONOR.
22                    (END OF PROCEEDINGS.)
23                      --o0o--
24
25
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

```
 1                  CERTIFICATE OF REPORTER

 2
    COUNTY OF LOS ANGELES      )
 3                             )  SS.
    STATE OF CALIFORNIA        )
 4

 5

 6  I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND FOR THE

 7  UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

 8  CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

 9  TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

10  CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

11  PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

12  TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

13  OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16  DATED:  JANUARY 11, 2015

17

18        /S/  ROSALYN ADAMS

19  ROSALYN ADAMS, CSR 11794
    OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**